FILED

2015 DEC 16  PM 4: 37

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2015 Grand Jury  C R 1 5 - C 6 8 8

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>             v.<br><br>FRANK ANDREW MUNOZ,<br>   aka "Lil' Man,"<br>   aka "Andy,"<br>   aka "Grandpa,"<br>LAWRENCE RUBLE KELLY,<br>   aka "Puppet,"<br>   aka "Lil' Puppet,"<br>   aka "Pups,"<br>   aka "P,"<br>ARMANDO SORIANO,<br>   aka "210,"<br>   aka "Mando,"<br>ERYANNA NEGRETE,<br>   aka "Baby Gangsta,"<br>   aka "Baby G,"<br>DESIREE HERNANDEZ,<br>   aka "Dimples,"<br>   aka "Dez,"<br>   aka "Deserie,"<br>GUADALUPE REYES,<br>   aka "Oso,"<br>JAVIER FRAUSTO,<br>   aka "Candyman,"<br>EDWARD WILLIAM GUERRERO,<br>   aka "Toro," and<br>GILBERT LIZALDE,<br>   aka "Sniper,"<br><br>             Defendants. | CR 15-<br><br>I N D I C T M E N T<br><br>[21 U.S.C. § 846: Conspiracy to Possess with Intent to Distribute and Distribute Methamphetamine; 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B): Possession with Intent to Distribute and Distribution of Methamphetamine] |

VOCS:JLW

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.   OBJECTS OF THE CONSPIRACY

Beginning on a date unknown but no later than on or about August 20, 2012, and continuing to on or about December 16, 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants FRANK ANDREW MUNOZ, also known as ("aka") "Lil' Man," aka "Andy," aka "Grandpa" ("MUNOZ"); LAWRENCE RUBLE KELLY, aka "Puppet," aka "Lil' Puppet," aka "Pups," aka "P" ("KELLY"); ARMANDO SORIANO, aka "210," aka "Mando" ("SORIANO"); ERYANNA NEGRETE, aka "Baby Gangsta," aka "Baby G" ("NEGRETE"); DESIREE HERNANDEZ, aka "Dimples," aka "Dez," aka "Deserie" ("HERNANDEZ"); GUADALUPE REYES, aka "Oso" ("REYES"); JAVIER FRAUSTO, aka "Candyman" ("FRAUSTO"); EDWARD WILLIAM GUERRERO, aka "Toro" ("GUERRERO"); and GILBERT LIZALDE, aka "Sniper" ("LIZALDE"); and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally commit the following offenses:

1.   To possess with intent to distribute and distribute at least 50 grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(viii); and

2.   To possess with intent to distribute and distribute at least five grams of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(B)(viii).

B.   MEANS BY WHICH THE OBJECTS OF THE CONSPIRACY WERE TO BE
ACCOMPLISHED

The objects of the conspiracy were to be accomplished, in
substance, as follows:

1.   Leaders of the drug trafficking organization, including
defendants MUNOZ and KELLY, would bestow permission upon individuals
to sell drugs within the territory controlled by the organization,
and sometimes charge drug distributors "taxes" for the right to sell
drugs within that territory.

2.   Members of the drug trafficking organization who had earned
the right to sell drugs within the territory controlled by the
organization by virtue of their membership in the organization,
including defendants MUNOZ, KELLY, SORIANO, NEGRETE, HERNANDEZ,
REYES, FRAUSTO, and GUERRERO, would obtain methamphetamine and sell
it to others in the organization who in turn would re-sell the
methamphetamine to others, and would also sell the methamphetamine to
their own customers within the territory controlled by the
organization.

3.   Methamphetamine sources of supply who were members of the
organization, including defendants KELLY and REYES, would sell
methamphetamine to other members of the organization, primarily for
re-sale to others.

4.   Methamphetamine sources of supply who were not members of
the organization, including defendant LIZALDE, would pay "taxes" for
the right to sell methamphetamine within the territory controlled by
the organization, and would sell methamphetamine to others within
that territory.

1     5.    Individual drug distributors, including defendants SORIANO,

2 NEGRETE, HERNANDEZ, FRAUSTO, and GUERRERO, would sell street-level

3 amounts of methamphetamine to customers within the territory

4 controlled by the organization.

5 C.    <u>OVERT ACTS</u>

6     In furtherance of the conspiracy, and to accomplish the objects

7 of the conspiracy, on or about the following dates, defendants MUNOZ,

8 KELLY, SORIANO, NEGRETE, HERNANDEZ, REYES, FRAUSTO, GUERRERO, and

9 LIZALDE, and others known and unknown to the Grand Jury, committed

10 various overt acts within the Central District of California and

11 elsewhere, including, but not limited to, the following:

12     <u>Overt Act No. 1:</u>    On or about August 20 and 21, 2012, by

13 telephone using coded language, defendant NEGRETE agreed to sell one

14 ounce of methamphetamine for $650 per ounce to a customer who,

15 unbeknownst to defendant NEGRETE, was a confidential source working

16 with law enforcement ("CS-3").

17     <u>Overt Act No. 2:</u>    On or about August 22, 2012, defendant

18 NEGRETE sold to CS-3 approximately 27.2 grams of methamphetamine for

19 $650 at a parking lot on Bay View Avenue in Wilmington, California.

20     <u>Overt Act No. 3:</u>    On or about August 29, 2012, by telephone

21 using coded language, defendant NEGRETE agreed to sell two ounces of

22 methamphetamine to CS-3.

23     <u>Overt Act No. 4:</u>    On or about August 30, 2012, by telephone

24 using coded language, defendant NEGRETE confirmed to CS-3 that

25 defendant NEGRETE had the methamphetamine ready for sale.

26     <u>Overt Act No. 5:</u>    On or about August 30, 2012, defendant

27 NEGRETE sold to CS-3 approximately 53.4 grams of methamphetamine for

28

1    $1,300 in front of a residence on Gulf Avenue in Wilmington,
2    California.
3         Overt Act No. 6:    On or about September 19, 2012, by telephone
4    using coded language, defendant NEGRETE agreed to sell two ounces of
5    methamphetamine to CS-3.
6         Overt Act No. 7:    On or about September 26, 2012, by telephone
7    using coded language, defendant NEGRETE, using defendant GUERRERO's
8    telephone, agreed to sell two ounces of methamphetamine to CS-3 the
9    same day.
10        Overt Act No. 8:    On or about September 26, 2012, defendants
11   NEGRETE and GUERRERO sold CS-3 approximately 45.0 grams of
12   methamphetamine for $1,300 at a residence on Wilmington Boulevard in
13   Wilmington, California.
14        Overt Act No. 9:    On or about October 30, 2012, by telephone
15   using coded language, defendant NEGRETE told defendant GUERRERO, who
16   was incarcerated, that defendant KELLY's associate had called her the
17   night before asking for payment for the methamphetamine that
18   defendant GUERRERO had obtained from defendant KELLY before defendant
19   GUERRERO went to jail.
20        Overt Act No. 10:    On or about October 30, 2012, by telephone
21   using coded language, defendant GUERRERO asked defendant NEGRETE if
22   she still had $1,000, and defendant NEGRETE said she did and that she
23   would give that money to defendant KELLY's associate, then work off
24   the rest of defendant GUERRERO's debt by selling drugs.
25        Overt Act No. 11:    On or about October 30, 2012, by telephone
26   using coded language, at defendant GUERRERO's urging, defendant
27   NEGRETE agreed to obtain drugs from defendant KELLY to sell in order
28   to make money.

1   <u>Overt Act No. 12:</u>   On or about October 30, 2012, by telephone
2   using coded language, defendant GUERRERO instructed defendant NEGRETE
3   not to go to defendant KELLY's house to pick up drugs; rather, she
4   should have defendant KELLY drop off drugs to her.

5   <u>Overt Act No. 13:</u>   On or about October 30, 2012, by telephone
6   using coded language, defendant GUERRERO agreed to call defendant
7   KELLY to arrange for defendant KELLY to supply drugs to defendant
8   NEGRETE.

9   <u>Overt Act No. 14:</u>   On or about October 30, 2012, by telephone
10  using coded language, defendant GUERRERO asked defendant NEGRETE what
11  defendant NEGRETE wanted him to tell defendant KELLY, and defendant
12  NEGRETE replied that she had $1,300 that she would pay defendant
13  KELLY.

14  <u>Overt Act No. 15:</u>   On or about October 30, 2012, by telephone
15  using coded language, defendant GUERRERO told defendant KELLY that
16  defendant GUERRERO had $1,300 to pay for the methamphetamine he had
17  purchased from defendant KELLY and that his girlfriend, defendant
18  NEGRETE, would also work for defendant KELLY selling drugs.

19  <u>Overt Act No. 16:</u>   On or about October 30, 2012, by telephone
20  using coded language, defendant GUERRERO told defendant KELLY that
21  defendant GUERRERO did not appreciate defendant KELLY's associate
22  asking defendant NEGRETE for the money that defendant GUERRERO owed
23  to defendant KELLY for the drugs.  Defendant KELLY replied that the
24  individual was doing it on behalf of defendant KELLY and not to worry
25  about it.

26  <u>Overt Act No. 17:</u>   On or about October 30, 2012, by telephone
27  using coded language, defendant NEGRETE complained to defendant
28

1  GUERRERO that she had no money and only a half-ounce of

2  methamphetamine.

3        Overt Act No. 18:   On or about October 30, 2012, by telephone

4  using coded language, defendant GUERRERO advised defendant NEGRETE to

5  contact defendant KELLY for more methamphetamine, and defendant

6  NEGRETE confirmed that she had but that defendant KELLY had only

7  given defendant NEGRETE an amount of methamphetamine that she paid

8  for.

9        Overt Act No. 19:   On or about October 30, 2012, by telephone

10  using coded language, defendant GUERRERO encouraged defendant NEGRETE

11  to continue selling drugs to make money.

12        Overt Act No. 20:   On or about November 2, 2012, by telephone

13  using coded language, defendant GUERRERO asked defendant NEGRETE to

14  bring defendant GUERRERO methamphetamine while he was incarcerated,

15  and defendant NEGRETE agreed.

16        Overt Act No. 21:   On or about November 4, 2012, by telephone

17  using coded language, defendant NEGRETE told defendant GUERRERO that

18  she did not have a source of supply for methamphetamine and that

19  defendant KELLY was not answering her phone calls.

20        Overt Act No. 22:   On or about November 4, 2012, by telephone

21  using coded language, defendant NEGRETE asked defendant GUERRERO if

22  she could use another source of supply, and defendant GUERRERO

23  consented and instructed defendant NEGRETE on the procedure by which

24  she would receive drugs from the source.

25        Overt Act No. 23:   On or about November 4, 2012, by telephone

26  using coded language, defendant NEGRETE told defendant GUERRERO that

27  she had obtained the identification for "Graciela Vargas" and she

28  would be able to visit defendant GUERRERO the following weekend.

1    <u>Overt Act No. 24:</u>   On or about November 10, 2012, defendant
2  NEGRETE possessed with intent to distribute approximately 11.6 grams
3  of methamphetamine inside her purse while she was in the parking lot
4  of the Pitchess Detention Center in Castaic, California, where, using
5  the false name "Graciela Vargas," she was going to visit defendant
6  GUERRERO and deliver the methamphetamine to him.

7    <u>Overt Act No. 25:</u>   On or about January 31, 2013, by telephone
8  using coded language, defendant NEGRETE agreed to sell one ounce of
9  methamphetamine to CS-3.

10   <u>Overt Act No. 26:</u>   On or about February 25 and 26, 2013, by
11  telephone using coded language, defendant FRAUSTO negotiated the
12  price of $725 for one ounce of methamphetamine which he arranged to
13  sell to CS-3.

14   <u>Overt Act No. 27:</u>   On or about February 26, 2013, defendant
15  FRAUSTO drove a white van with three minor children passengers to the
16  parking lot of Taco Sinaloa Restaurant on Anaheim Street in
17  Wilmington, California, to conduct a methamphetamine transaction.

18   <u>Overt Act No. 28:</u>   On or about February 26, 2013, defendant
19  FRAUSTO sold approximately 27.5 grams of methamphetamine, which he
20  obtained from the rear of the white van, to CS-3 in the parking lot
21  of Taco Sinaloa Restaurant on Anaheim Street in Wilmington,
22  California.

23   <u>Overt Act No. 29:</u>   On or about May 16, 2013, defendant FRAUSTO
24  agreed to sell two ounces of methamphetamine for $1,300 to CS-3.

25   <u>Overt Act No. 30:</u>   On or about May 16, 2013, by text message
26  using coded language, defendant SORIANO agreed to sell two ounces of
27  "good" methamphetamine to CS-3 for $1,200, which defendant SORIANO
28  later dropped to $1,100.

1        Overt Act No. 31:   On or about June 5, 2013, by telephone using

2    coded language, defendant SORIANO agreed to sell one ounce of

3    methamphetamine for $500 the next day to CS-3.

4        Overt Act No. 32:   On or about July 9, 2013, by telephone using

5    coded language, an individual from another organization said that

6    defendant SORIANO had demanded that the individual pay "rent" to

7    defendant SORIANO's organization in order to sell drugs in the

8    territory controlled by that organization, and that defendant KELLY

9    wanted to meet in person to discuss it.

10       Overt Act No. 33:   On or about August 1, 2013, by telephone

11   using coded language, defendant NEGRETE arranged to obtain

12   methamphetamine from an unindicted co-conspirator known to the Grand

13   Jury so that she could sell methamphetamine to her customers.

14       Overt Act No. 34:   On or about September 13, 2013, by telephone

15   using coded language, defendants SORIANO and HERNANDEZ negotiated

16   with an unindicted co-conspirator known to the Grand Jury the price

17   of one pound of very pure methamphetamine from a supplier from

18   Sinaloa, Mexico.

19       Overt Act No. 35:   On or about September 13, 2013, by telephone

20   using coded language, defendant SORIANO asked defendant HERNANDEZ

21   whether the source of supply was "consistent" enough to keep up with

22   their methamphetamine sales, and defendants SORIANO and HERNANDEZ

23   discussed the amount of profit that they could make re-selling that

24   methamphetamine.

25       Overt Act No. 36:   On or about September 13, 2013, by telephone

26   using coded language, defendant HERNANDEZ vouched for the quality of

27   the methamphetamine because she had seen it, and remarked that it was

28   "way better" than the methamphetamine supplied by defendant KELLY.

1    Overt Act No. 37:   On or about September 13, 2013, by telephone
2  using coded language, defendant SORIANO stated that he wanted to
3  consult with defendant KELLY before meeting the Sinaloa source of
4  supply because defendant KELLY might be interested in the deal
5  because the methamphetamine might be of better quality and they could
6  develop a long-term relationship with the new source of supply.

7    Overt Act No. 38:   On or about September 13, 2013, by telephone
8  using coded language, defendant SORIANO also anticipated that
9  defendant KELLY would question whether it would be worth the added
10  risk of doing business with this new source of methamphetamine when
11  they already had established sources of supply.

12    Overt Act No. 39:   On or about September 13, 2013, by telephone
13  using coded language, defendant SORIANO stated that he wanted to
14  introduce the Sinaloa source of supply to defendant MUNOZ.

15    Overt Act No. 40:   On or about September 14, 2013, by telephone
16  using coded language, defendant SORIANO told an unidentified co-
17  conspirator to ask her friend if she needed any drugs because he
18  needed the money.

19    Overt Act No. 41:   On or about September 14, 2013, using coded
20  language, defendant SORIANO told defendant HERNANDEZ to bring
21  defendant SORIANO the drugs that were located in the middle of
22  defendant HERNANDEZ' car, and defendant HERNANDEZ agreed.

23    Overt Act No. 42:   On or about September 15, 2013, by telephone
24  using coded language, defendant SORIANO asked an unindicted co-
25  conspirator known to the Grand Jury if he had seen defendant
26  SORIANO's two bags of methamphetamine, and the unindicted co-
27  conspirator said he had seen the methamphetamine lying around and had
28  hidden them for defendant SORIANO.

Overt Act No. 43:   On or about September 15, 2013, by telephone using coded language, defendant SORIANO said he needed the methamphetamine immediately because defendant SORIANO had a customer in San Pedro who wanted methamphetamine, and the unindicted co-conspirator agreed to bring the methamphetamine to defendant SORIANO.

Overt Act No. 44:   On or about September 15, 2013, by telephone using coded language, defendant SORIANO told defendant KELLY that another individual had told defendant SORIANO that the individual had better quality drugs than did defendants KELLY and SORIANO, and that the individual would sell it in defendant SORIANO's locations.

Overt Act No. 45:   On or about September 15, 2013, by telephone using coded language, defendant KELLY said that defendant SORIANO should order another member of the organization to assault the individual making the challenge to their organization's control of its drug locations.

Overt Act No. 46:   On or about September 16, 2013, by telephone using coded language, defendant SORIANO told an unindicted co-conspirator known to the Grand Jury that defendant SORIANO was low on money so he could not pay the unindicted co-conspirator until he first sold drugs on behalf of the organization.

Overt Act No. 47:   On or about September 17, 2013, by text message using coded language, defendant SORIANO agreed to supply an unidentified co-conspirator with nine grams of methamphetamine for $200.

Overt Act No. 48:   On or about September 17, 2013, by telephone using coded language, defendant SORIANO asked defendant NEGRETE if she knew anyone who could supply him with one ounce of methamphetamine, and defendant NEGRETE agreed to ask an unindicted

11

1   co-conspirator known to the Grand Jury to supply her with the
2   methamphetamine that she would in turn supply to defendant SORIANO
3   the next day.

4       Overt Act No. 49:   On or about September 18, 2013, by telephone
5   using coded language, defendant SORIANO asked an unindicted co-
6   conspirator known to the Grand Jury how much he was paying for one
7   ounce of methamphetamine, and the unindicted co-conspirator replied
8   that defendant SORIANO should know since defendant SORIANO was his
9   source of supply.

10      Overt Act No. 50:   On or about September 18, 2013, by telephone
11  using coded language, an unidentified co-conspirator asked defendant
12  SORIANO if defendant SORIANO had drugs to supply, to which defendant
13  SORIANO replied yes.

14      Overt Act No. 51:   On or about September 18, 2013, by telephone
15  using coded language, the unindicted co-conspirator asked to be a
16  drug customer of defendant SORIANO, and defendant SORIANO agreed.

17      Overt Act No. 52:   On or about September 18, 2013, by telephone
18  using coded language, defendant SORIANO negotiated the price of one
19  ounce of methamphetamine with an unindicted co-conspirator known to
20  the Grand Jury, who asked for a "discount."

21      Overt Act No. 53:   On or about September 18, 2013, by telephone
22  using coded language, defendant SORIANO agreed to sell the
23  methamphetamine to the unindicted co-conspirator, whose help
24  defendant SORIANO said he needed to re-sell the methamphetamine.

25      Overt Act No. 54:   On or about September 18, 2013, by telephone
26  using coded language, defendant SORIANO told defendant KELLY that two
27  members of a different organization, one of whom was defendant
28  LIZALDE, had approached defendant SORIANO and asked how much it would

1  cost for them to sell drugs in the territory controlled by their
2  organization, and defendant KELLY said to charge them $200.

3       Overt Act No. 55:   On or about September 18, 2013, by telephone
4  using coded language, defendant KELLY also asked which of the members
5  of the other organization would be responsible for paying the tax
6  going forward, and defendant SORIANO replied that it would be
7  defendant LIZALDE.

8       Overt Act No. 56:   On or about September 18, 2013, by telephone
9  using coded language, defendant SORIANO said that defendant SORIANO
10 had obtained one ounce of methamphetamine from defendant LIZALDE for
11 $350, which was a "good deal."

12      Overt Act No. 57:   On or about September 18, 2013, by telephone
13 using coded language, defendant SORIANO told defendant LIZALDE that
14 defendant SORIANO was going to put defendant LIZALDE in touch with
15 defendant KELLY because defendant KELLY wanted to talk to defendant
16 LIZALDE.

17      Overt Act No. 58:   On or about September 18, 2013, by telephone
18 using coded language, defendant SORIANO told an unidentified co-
19 conspirator that he was waiting for defendant LIZALDE to drop off
20 drugs and that defendant LIZALDE was giving him a good deal.

21      Overt Act No. 59:   On or about September 18, 2013, by telephone
22 using coded language, defendant SORIANO asked defendant LIZALDE for a
23 half-ounce of methamphetamine in addition to the one ounce of
24 methamphetamine that defendant LIZALDE was supplying,

25      Overt Act No. 60:   On or about September 18, 2013, by telephone
26 using coded language, defendant LIZALDE said the extra half-ounce of
27 methamphetamine would cost $200 and agreed to bring defendant SORIANO
28 a total of one-and-a-half ounces of methamphetamine.

Overt Act No. 61:   On or about September 18, 2013, by telephone using coded language, defendant NEGRETE asked defendant SORIANO if he still needed one ounce of methamphetamine, and defendant SORIANO said he was willing to pay between $350 and $400 for the methamphetamine as long as defendant NEGRETE was not obtaining the methamphetamine from defendant LIZALDE.

Overt Act No. 62:   On or about September 18, 2013, by telephone using coded language, defendant KELLY told defendant LIZALDE that it would cost $50 a month each for him and a female associate to sell drugs in the neighborhood controlled by defendant KELLY's organization and that it would be $100 a month for a third person to do so, and defendant KELLY ordered defendant LIZALDE to be the one responsible each month for getting the payments to defendant KELLY.

Overt Act No. 63:   On or about September 18, 2013, by telephone using coded language, defendant LIZALDE informed defendant SORIANO that defendant LIZALDE had successfully collected $50 from his associate, her share of the "taxes" owed to be able to sell drugs within the neighborhood controlled by the organization, and defendant SORIANO arranged for defendant LIZALDE to bring the money to him once defendant SORIANO arrived at the neighborhood controlled by the organization.

Overt Act No. 64:   On or about September 18, 2013, by telephone using coded language, defendant SORIANO warned defendant KELLY about federal law enforcement vehicles in the neighborhood controlled by their organization.

Overt Act No. 65:   On or about September 18, 2013, by telephone using coded language, defendant KELLY ordered defendant SORIANO to follow the law enforcement vehicles to see where they were going and

to call back and update defendant KELLY because defendant KELLY was in the middle of selling drugs, and defendant SORIANO agreed to do so.

Overt Act No. 66:   On or about September 18, 2013, by telephone using coded language, defendant NEGRETE asked defendant SORIANO how much defendant SORIANO was charging for a half-ounce of methamphetamine and told defendant SORIANO that defendant NEGRETE's customer had $230 for it.

Overt Act No. 67:   On or about September 18, 2013, by telephone using coded language, defendant SORIANO agreed to sell defendant NEGRETE's customer a half-ounce of methamphetamine for that price.

Overt Act No. 68:   On or about September 18, 2013, by telephone using coded language, defendant HERNANDEZ told defendant SORIANO that a customer of defendant HERNANDEZ' wanted to purchase methamphetamine.

Overt Act No. 69:   On or about September 18, 2013, by telephone using coded language, when defendant SORIANO agreed to deliver the methamphetamine to the customer, defendant HERNANDEZ complained that defendant SORIANO was making all of the money from drug sales and that she was not profiting.

Overt Act No. 70:   On or about September 19, 2013, by telephone using coded language, defendant SORIANO told an unindicted co-conspirator known to the Grand Jury to call defendant SORIANO first if anyone needed drugs and that defendant SORIANO would provide them.

Overt Act No. 71:   On or about September 19, 2013, by telephone using coded language, defendant SORIANO asked an unindicted co-conspirator known to the Grand Jury if she could sell drugs for him,

1   and the unindicted co-conspirator replied that she needed to ask

2   defendant KELLY for permission first.

3        Overt Act No. 72:   On or about September 19, 2013, by telephone

4   using coded language, defendant SORIANO predicted that defendant

5   KELLY would refer the unindicted co-conspirator to defendant SORIANO

6   because defendant KELLY did not "deal with little things."

7        Overt Act No. 73:   On or about September 19, 2013, by telephone

8   using coded language, defendant SORIANO told defendant KELLY that

9   defendant SORIANO had just met with defendant MUNOZ and an unindicted

10  co-conspirator known to the Grand Jury, and they advised that

11  defendant KELLY had paid them for permission to sell drugs within the

12  territory controlled by their organization.

13       Overt Act No. 74:   On or about September 19, 2013, by telephone

14  using coded language, defendant SORIANO also advised defendant KELLY

15  that defendant REYES was helping defendant MUNOZ and the unindicted

16  co-conspirator to distribute drugs.

17       Overt Act No. 75:   On or about September 19, 2013, defendant

18  HERNANDEZ was driving a silver Toyota Solara with defendant SORIANO

19  riding as a passenger when they were detained by law enforcement, who

20  subsequently seized approximately 32.4 grams of methamphetamine from

21  defendant HERNANDEZ' bra.

22       Overt Act No. 76:   On or about September 19, 2013, by telephone

23  using coded language, defendant HERNANDEZ said that defendant SORIANO

24  had put the methamphetamine inside her bra and that defendant SORIANO

25  asked law enforcement to let defendant HERNANDEZ, defendant SORIANO's

26  girlfriend, go.

27       Overt Act No. 77:   On or about September 19, 2013, by telephone

28  using coded language, defendant HERNANDEZ told an unindicted co-

1  conspirator known to the Grand Jury that defendant KELLY picked her
2  up from jail and that defendant HERNANDEZ had been tasked with
3  getting defendant KELLY's guns back to him so all of defendant
4  SORIANO's guns needed to go back to the person who was collecting
5  them for defendant KELLY.

6    Overt Act No. 78:   On or about September 19, 2013, by telephone
7  using coded language, defendant HERNANDEZ affirmed her allegiance to
8  the organization.

9    Overt Act No. 79:   On or about September 20, 2013, by telephone
10  using coded language, defendant HERNANDEZ said that defendant SORIANO
11  had just received one ounce of methamphetamine from defendant KELLY
12  when defendant SORIANO was arrested, so defendant SORIANO owed
13  defendant KELLY the majority of the cost of that methamphetamine.

14    Overt Act No. 80:   On or about September 20, 2013, by telephone
15  using coded language, defendant HERNANDEZ complained that she was
16  unhappy with the fact that she was purchasing methamphetamine from
17  defendant KELLY because his prices were too high and defendant
18  HERNANDEZ could purchase it elsewhere for less and make more profit.

19    Overt Act No. 81:   On or about September 24, 2013, by telephone
20  using coded language, defendant HERNANDEZ acknowledged to defendant
21  SORIANO that one of the pieces of methamphetamine in her bra belonged
22  to her and the other piece of methamphetamine belonged to defendant
23  SORIANO, and she thanked defendant SORIANO for taking responsibility
24  for all of the methamphetamine.

25    Overt Act No. 82:   On or about September 24, 2013, by telephone
26  using coded language, when defendant SORIANO asked what defendant
27  HERNANDEZ was doing while he was incarcerated, defendant HERNANDEZ
28  replied that she was selling drugs to other individuals, and said

1  that she had met with defendant KELLY, who had provided her with a

2  half-ounce of methamphetamine.

3      Overt Act No. 83:   On or about September 24, 2013, by telephone

4  using coded language, defendant SORIANO instructed defendant

5  HERNANDEZ to call his drug customers and tell them that she was

6  selling drugs now that defendant SORIANO was incarcerated, and

7  defendant SORIANO encouraged defendant HERNANDEZ to continue selling

8  drugs and to "expand" their drug business.

9      Overt Act No. 84:   On or about September 24, 2013, by telephone

10 using coded language, defendant HERNANDEZ responded by telling

11 defendant SORIANO to trust her because she knew what she was doing.

12     Overt Act No. 85:   On or about September 25, 2013, by telephone

13 using coded language, defendant HERNANDEZ told an unindicted co-

14 conspirator known to the Grand Jury that defendant SORIANO wanted

15 everyone to know that they could call defendant HERNANDEZ if they

16 wanted to purchase drugs.

17     Overt Act No. 86:   On or about September 25, 2013, by telephone

18 using coded language, defendant SORIANO instructed defendant

19 HERNANDEZ to go to defendant KELLY to obtain a firearm to give to

20 another member of their organization whom defendant HERNANDEZ should

21 have accompany her for her protection while selling drugs, and

22 defendant HERNANDEZ said that she has "permission" to sell drugs.

23     Overt Act No. 87:   On or about September 26, 2013, by telephone

24 using coded language, an unindicted co-conspirator known to the Grand

25 Jury told defendant SORIANO that the unindicted co-conspirator had

26 paid defendant KELLY $400 to clear defendant SORIANO's "debt" for the

27 methamphetamine seized on September 19, 2013, which had been given to

28 defendant SORIANO by defendant KELLY.

1    Overt Act No. 88:   On or about September 26, 2013, by telephone
2    using coded language, defendant HERNANDEZ advised defendant SORIANO
3    that she was using a new source of supply of methamphetamine, and
4    that her customers preferred it to the methamphetamine supplied by
5    defendant KELLY and were willing to pay more money for it.

6    Overt Act No. 89:   On or about September 26, 2013, by telephone
7    using coded language, an unindicted co-conspirator known to the Grand
8    Jury advised defendant SORIANO that the unindicted co-conspirator had
9    paid defendant KELLY the money that defendant SORIANO owed to
10   defendant KELLY for the methamphetamine seized on September 19, 2013,
11   which had been provided by defendant KELLY.

12   Overt Act No. 90:   On or about October 25, 2013, by text
13   message using coded language, defendant REYES agreed to supply
14   defendant MUNOZ with six ounces of methamphetamine.

15   Overt Act No. 91:   On or about October 26, 2013, by text
16   message using coded language, defendant REYES informed defendant
17   MUNOZ that the six ounces of methamphetamine that defendant MUNOZ had
18   ordered was ready for pick-up.

19   Overt Act No. 92:   On or about October 26, 2013, by telephone
20   using coded language, defendant REYES asked defendant MUNOZ how
21   defendant MUNOZ wanted the six ounces of methamphetamine to be
22   packaged, and defendant MUNOZ asked for it to be separated into two
23   three-ounce packages.

24   Overt Act No. 93:   On or about October 27, 2013, by telephone
25   using coded language, an unindicted co-conspirator known to the Grand
26   Jury reminded defendant MUNOZ about collecting "tax" money from a
27   low-level drug distributor and the unindicted co-conspirator said he
28   would be collecting from the drug distributor soon.

Overt Act No. 94:   On or about October 27, 2013, by telephone using coded language, when the unindicted co-conspirator said that he was trying to locate others from whom he would collect "tax" money, defendant MUNOZ responded, "We gotta get our motherfucking money."

Overt Act No. 95:   On or about October 28, 2013, by telephone using coded language, defendant MUNOZ said that he and an unindicted co-conspirator known to the Grand Jury had given the low-level drug distributor one ounce of drugs, and the drug distributor was expected to drop off "tax" money but did not do so.

Overt Act No. 96:   On or about October 28, 2013, defendant MUNOZ received a text message from a drug distributor which, in coded language, stated that he would be late with defendant MUNOZ' monthly "tax" payment.

Overt Act No. 97:   On or about November 18, 2013, by telephone using coded language, defendant MUNOZ ordered six ounces of methamphetamine from defendant REYES, which defendant REYES agreed to supply to defendant MUNOZ.

Overt Act No. 98:   On or about November 18, 2013, by telephone using coded language, defendant MUNOZ informed defendant REYES that defendant MUNOZ was on the street in front of defendant REYES' residence, waiting to pick up the six ounces of methamphetamine.

1

## COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about August 22, 2012, in Los Angeles County, within the Central District of California, defendant ERYANNA NEGRETE, also known as ("aka") "Baby Gangsta," aka "Baby G," knowingly and intentionally distributed at least five grams, that is, approximately 27.2 grams, of methamphetamine, a Schedule II controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about August 30, 2012, in Los Angeles County, within the Central District of California, defendant ERYANNA NEGRETE, also known as ("aka") "Baby Gangsta," aka "Baby G," knowingly and intentionally distributed at least 50 grams, that is, approximately 53.4 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FOUR

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about September 26, 2012, in Los Angeles County, within the Central District of California, defendants ERYANNA NEGRETE, also known as ("aka") "Baby Gangsta," aka "Baby G," and EDWARD WILLIAM GUERRERO, aka "Toro," knowingly and intentionally distributed at least five grams, that is, approximately 45.0 grams, of methamphetamine, a Schedule II controlled substance.

COUNT FIVE

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about November 10, 2012, in Los Angeles County, within the Central District of California, defendant ERYANNA NEGRETE, also known as ("aka") "Baby Gangsta," aka "Baby G," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 11.6 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SIX

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about February 26, 2013, in Los Angeles County, within the Central District of California, defendant JAVIER FRAUSTO, also known as "Candyman," knowingly and intentionally distributed at least five grams, that is, approximately 27.5 grams, of methamphetamine, a Schedule II controlled substance.

COUNT SEVEN

[21 U.S.C. §§ 841(a)(1), (b)(1)(B)(viii)]

On or about September 19, 2013, in Los Angeles County, within the Central District of California, defendants ARMANDO SORIANO, also known as ("aka") "210," aka "Mando," and DESIREE HERNANDEZ, aka "Dimples," aka "Dez," aka "Deserie," knowingly and intentionally possessed with intent to distribute at least five grams, that is, approximately 32.4 grams, of methamphetamine, a Schedule II controlled substance.

A TRUE BILL

/s/

Foreperson

EILEEN M. DECKER
United States Attorney

LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division

ELIZABETH R. YANG
Assistant United States Attorney
Chief, Violent and Organized
    Crime Section

JUSTIN R. RHOADES
Assistant United States Attorney
Deputy Chief, Violent and
    Organized Crime Section

JENNIE L. WANG
Assistant United States Attorney
Violent and Organized Crime
    Section

26